## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**PAUL ANDREW WENDELGAST**                                               **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO. 3:07CV-P284-H**

**LOUISVILLE METRO POLICE DEPT. et al.**                              **DEFENDANTS**

### MEMORANDUM OPINION

The plaintiff, Paul Andrew Wendelgast, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed.

### I. SUMMARY OF CLAIMS

The plaintiff is a pretrial detainee at Louisville Metro Corrections. He sues the Louisville Metro Police Department (LMPD) and the "574-LMPD Entity." He states that on the evening of August 3, 2005, he dialed the 911 operator, stated that he was the person the police wanted to talk to, and requested that a detective be sent to pick him up. He states that a detective was sent, and he turned himself in. He alleges that after being incarcerated for some time he found himself as the "posterchild for 574-LMPD," with a televised ad stating that he was captured by someone calling their tip line, as if he "were a fugitive running from the law, which is a lie." He alleges that his Fourteenth Amendment rights have been violated "by misinformation through a televised lie," which impairs his ability to have a fair and impartial jury of his peers. He states that he has been troubled by the 574-LMPD advertisement on television and is now on medication to help him deal with his everyday thoughts about this situation. He further states that he is a construction worker, who has worked in Louisville all of his life, and that he is not going to be

able to work in the community any longer. He states that he is seeking compensation for mental anguish and cruel and unusual punishment in violation of the Eighth Amendment[1] and of his due process rights under the Fifth and Fourteenth Amendments.

He requests relocation fees in the amount of $100,000; injunctive relief in the form of removing his face/name from LMPD's ads; punitive damages of $1,000,000; and declaratory relief in the form of correcting the record to show that he turned himself in to the police.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974 (2007).

---

[1] "Because the Cruel and Unusual Punishments Clause 'is concerned' with punishment by the state 'after it has secured a formal adjudication of guilt in accordance with due process of law,' it does not apply to pretrial detainees." *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (footnote and citations omitted). "However, state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, which provides similar if not greater protections than the Cruel and Unusual Punishments Clause." *Id.* (footnote and citations omitted).

The LMPD and the "574-LMPD Entity" are not "persons" subject to suit under § 1983 because municipal departments, such as a police department, are not suable under § 1983. *Compare Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir.1991) (holding that a police department may not be sued under § 1983). In this situation, it is the Louisville Metro government that is the proper defendant in this case. *Smallwood v. Jefferson County Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). Further, the Louisville Metro government is a "person" for purposes of § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). The Court will therefore construe the claims against the LMPD and the "574-LMPD Entity" as brought against the Louisville Metro government.

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988)

(quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In the instant case, the plaintiff has failed to allege the existence of a governmental policy or custom relative to the nature of his complaints and claims. Consequently, this action will be dismissed for failure to state a claim upon which relief may be granted. A separate order consistent with this Memorandum Opinion will be entered.

Date:

cc: Plaintiff, *pro se*
Defendants
Jefferson County Attorney
4412.009

4